Good morning, Your Honors. May it please the Court. My name is David Casarubias, and I, along with Mitchell Van Landingham, our student co-counsel, on behalf of the petitioner, Mr. Antonio Patio Sicat. Are you from Hastings? Is that where you're from? Yes, Your Honor. We are joined here today by Supervising Counsel Mr. Gary Watt and Ms. Leah Sparrow. I will be reserving two minutes of my time for rebuttal. Okay. The immigration judge abused his discretion by coming to the erroneous legal conclusion that Mr. Sicat was statutorily ineligible for relief. As this Court has held in Yang v. Lynch, an immigration judge abuses his discretion when he acts contrary to law. And here, by making the finding that Mr. Sicat was statutorily ineligible for relief under INA Section 245e1, he abused his discretion. Wait a minute. I'm really confused. I thought this was the case about the in absentia. Yes, Your Honor. So why are we talking about whether he's statutorily ineligible for relief? Precisely. That's exactly the point here, Your Honor, that the immigration judge grasped onto this factor that Mr. Sicat was not prima facie statutorily eligible for relief in order to come to the conclusion that he had not produced some. Oh, you mean that he wasn't statutorily. Okay. So you want to argue that he was statutorily eligible for relief? Don't you just want to talk about why, whether the letter was, the conclusion in the letter was received was justifiable or not? Yes, Your Honor. But the immigration judge, in determining whether Mr. Sicat's affidavits, the statements made therein, sufficiently proved that he did not receive the government's One of those factors is looking at whether or not the movement. Let's suppose that the immigration judge was wrong, as you claim. Put that to one side. Wasn't there sufficient circumstantial evidence to rebut the affidavits of non-receipt of the letter? No, Your Honor. Let me ask you this. Was either the notice of hearing that was sent for November 16, 2015, or the in absentia order on March 4, 2016, were they ever returned by mail as undeliverable to DHS? They were not, Your Honor. Well, isn't that some evidence that they were received? Your Honor, that is inappropriate evidence to consider, per this Court's holding in Salta v. INS, in which this Court distinguished the type of evidence necessary to rebut the presumption of effective service by certified mail, which would be evidence such as receipt of undelivered mail from the post office. But this Court explicitly stated that that type of evidence is inappropriate for cases dealing with regular mail. No. The last element of Salta was other circumstances, right? Yes, Your Honor. Isn't this another circumstance? Your Honor, that is a circumstance that is prohibited by this Court's decision in Salta, because that evidence goes towards certified mail cases. And here, when we're dealing with a slight, a low burden of proof, then that type of evidence. But as a matter of common sense, don't we receive back letters from the post office every day, not every day, but whenever we write them, because we don't write them Your Honor, that does happen at times. Of course. But here, Mr. Sitka is attesting in his affidavit that he's having mail problems, and so. No, no. He didn't say he was having mail problems. He said just the opposite. He didn't say anything about having other mail problems. He said he wasn't getting immigration mail. Not that he wasn't getting IRS mail. Not that he wasn't getting DMV mail. Not that he wasn't getting advertising mail. But only immigration mail he wasn't getting. That's a very selective nondelivery, isn't it? Isn't that circumstantial evidence that maybe he was getting mail? Well, Your Honor, two points. First, however inartfully Mr. Sitka composed his affidavit, that doesn't necessarily mean he wasn't receiving mail from other sources. As the Seventh Circuit. He didn't say one way or another. He didn't say he was receiving mail from other sources. He just didn't say. Right. Exactly, Your Honor. Okay. And as the Seventh Circuit noted in Smikini v. Holder, there the Court said mail is sometimes misdelivered. And thus it is not a factor that can definitively weigh against a move in on a motion to reopen where the burden is so low as this Court noted in Salta. This leads me to the second legal error that the immigration judge had here in abusing his discretion. And that was in making an impermissible credibility determination on a motion to reopen. And this Court has consistently held since Basin v. Gonzalez and Gang v. Lynch that credibility determinations are wholly inappropriate on motions to reopen because they are conducted without a factual hearing. So let me ask you that. If we were to agree with you that the relatively weak presumption of mailing, of receipt was rebutted, what does that lead to? Does it lead to an evidentiary hearing on the question of the receipt? No, Your Honor. Why not? It seems to me most logically it does. Your Honor. At least some of our case law says that. That is what happened in Salta, but namely because Salta did not submit an affidavit with her motion to reopen. So the Court reopened the proceedings to give her the opportunity. But why shouldn't an I.J. be able to decide, you know, with the live witnesses who he believed in, whether he believed what they were saying? I mean, Judge Bea has given you some reasons why someone might disbelieve that. Should they disbelieve it on the papers or should they just have a hearing? Your Honor, credibility determinations are best left for a hearing. Right. Not on a motion to reopen where the judge is simply reading papers. This Court's directive from Yangian. Correct. So that leads to the conclusion that there should be a hearing on the motion to reopen rather than simply decided on the papers. It does lead to the conclusion that it's reopened on the merits, does it? Well, Your Honor, in this record, there's sufficient evidence to show that he did not receive notice, and the Court could follow it. But there are a lot of questions. For example, I mean, if I wanted to decide whether to believe him or not, I'd like to know where exactly does he live. Are there other apartments there? Is mail – has other mail not arrived? Et cetera. There are things I'd want to know. This may well be sufficient for the purposes of at least triggering that hearing, but does it lead to the conclusion that he – simply by writing that, he rebuts the presumption? He not only rebuts the presumption, but he prevails on the question of whether he did receive it. That's precisely what happens, Your Honor. In Mejia v. Ashcroft, the Court simply granted the petition and directed the BIA to reopen proceedings to then consider the merits of his claim. That is, his I-130 and his I-485 petition to adjust status. The Court would not remand for a new – Which case was that? That's Mejia v. Ashcroft, Your Honor. It wasn't cited in our brief, but I can submit a letter with a citation to that case. I don't have it. Okay. I'll find it. Thank you. Counsel, can I ask you, you were talking at the beginning of your presentation regarding whether Mr. Seacott was eligible for adjustment or not. Are you referring to at the time of his scheduled removal hearing? And that's a question that I have, because the – in the briefing, it was argued that he was not eligible for adjustment at the time that he would have had his scheduled removal hearing. What's your position on that? Your Honor, that is an erroneous legal conclusion, because the question is whether an individual is statutorily eligible for relief. And as the government noted in the previous I-130 petition that was abandoned, Mr. Seacott could immediately refile the I-130 petition. But he hadn't. He was statutorily ineligible because Mrs. Chow hadn't – pardon me, his new wife, Yev Chow – hadn't filed the I-130. Your Honor, there is a distinction between whether the application was pending or whether statutorily he was eligible to do that. The whole point of that factor is to determine whether the movement had a motive to avoid their hearing. And so if statutorily he could file an I-130 petition at any time during these proceedings, he had no motive to avoid the hearing, thus corroborates the statements in his affidavit that he did not receive this notice. Is there any reason at all in the record to think that there was – the mailing was to the wrong address? I know that changed their address recently, but the documents, as I understand it, do have the correct address appearing on at least some of them. Is that right? Yes, Your Honor. They do have the correct address. We don't have the envelopes. We don't have the envelopes. We just have a copy of the government's notice in which they state what address they were mailing it to. But that's precisely the issue with regular mail, that it doesn't produce any evidence, and thus that's why this Court in Salta created such a low bar. Mr. Secott has certainly met it. We ask that this Court grant the petition. Thank you. Good morning, Your Honors. Jonathan Ross for the United States Attorney General. The primary issue in this case certainly is the presumption of delivery that attaches to mail that is sent – to hearing notices that is sent even through regular mail. I agree with my colleague that the presumption for regular mail is less than that of certified mail. However, in this case, the immigration judge found – and he didn't abuse his for the slight presumption, Mr. Secott had not rebutted that. This was a finding that – How many affidavits were submitted saying that they didn't receive it? There was one affidavit submitted from Mr. Secott, two from his spouse, and one from his daughter. So that's four? That is four, yes, Your Honor. Four affidavits saying that they didn't receive it is not enough to overcome a weak presumption? That's correct, Your Honor, and I'll explain exactly why. Let me ask you something first. Yes. Under the common law, to have a presumption of receipt, you have to prove that it was mailed to the correct address? Correct. Usually there's some affidavit or you have an envelope, you have an affidavit from somebody saying that it was mailed to the correct address. As far as I can tell, what we have here is we have the documents themselves which show the correct address, but the certificates of mailing don't say that they were mailed to the correct address, right? I'm sorry. What was the last part? The certificates of mailing just say that they were mailed. They don't say where they were mailed. So we don't have any, and we have no person or business record. We don't exactly have, it seems to me, what would give rise to a presumption of receipt under the common law, do we? I don't necessarily agree, Your Honor. In this situation, when a hearing notice is mailed out, that notice that we see in the record is actually put into an envelope with a plastic window on it. So that address that's on it is the address that goes. I see. But that fact doesn't appear on the record, but you're telling us that's the case. That's correct. And now, so far as Judge Berg's question concerning the affidavits, it's very true that in SALTA that a sworn affidavit ordinarily is sufficient. However, I want to go back to Judge Berg's original question, which was the fact that, very briefly, number one, there was a — I want to correct the record. Petitioner today says that they challenged that the circumstantial evidence that the mailing went out from the court. That was never argued before today. In fact, this is the very first time that they're saying that circumstantial evidence is being challenged. Moreover— Wait a minute. I don't understand what you mean by that. The circumstantial evidence that the — because the — I'm sorry. It was actually Judge Bea that said it. The circumstantial evidence that the mailing went out from the immigration court by virtue of the envelopes not being returned. That was never challenged before today. What do you mean it wasn't challenged? What wasn't challenged? That it wasn't returned? They never— That circumstantial evidence. They point to other pieces in the record to challenge the circumstantial evidence to that regard. You mean that there's a dispute about whether that was returned? It appears — I don't know. Do you have any affidavit that it wasn't returned? No, Your Honor. I do not. However— But what's the circumstance? What's any evidence that it wasn't returned? As recognized in Salta, there is circumstantial evidence that by virtue of it not being returned, that it is delivered to the last mailed address. Mr. Salta— But what I want to know is, has anybody at the DHS put in a declaration or any reason to think it wasn't returned? How do we know it wasn't returned? In terms of DHS, that would be different from the hearing notice from EOIR, the immigration court. Do we have anything from EOIR from anybody saying that it wasn't returned? No, Your Honor. So how do we know it wasn't returned? Simply by virtue that it's not in the record. That is the best evidence we have. Well, but it obviously would be your burden to put in that it wasn't returned and you didn't do that. That's correct. And that's the presumption. So we have no idea whether it was returned. It may have been returned. That's correct, Your Honor. And that's the presumption. All right. It seems to me that washes entirely. I'm sorry? So it washes. It's not circumstantial evidence, if anything, because it is an evidence. I understand, Your Honor. Turning, however, to the — this is really a question of motive. And if you look at the Salta case and its progeny, motive is a very important part of the standards of the — of the subjects that's considered in MRA. Motive in this case, the courts have historically looked at what is the Petitioner's motive to appear in court. And, in fact, the motion to reopen was indeed reversed in those cases where — was indeed reversed in those cases where record evidence demonstrated that the Petitioner had every reason to appear. The fact that they did not come to court — they had no reason not to come to court. That's completely different in this case. The Petitioner had, in fact, showed up ten different times. Is that right? They did. And, Your Honor, I'm glad that you brought that up, because although they did show up ten different times, they only showed up when things were going their way. They only showed up when they had relief pending before the court. At the time that he did not show up, there was no relief available and he had already conceded his removability. So, therefore, whether he showed up or not, the result was going to be the same. He couldn't have showed up and said I — and the day before he showed up, submitted a new application and asked to stay the proceedings? That would have been a pretty usual thing to do, no? Perhaps. However, he had — his original application was denied by USCIS. After he went to the USCIS interview to discuss the bona fides of his marriage to his current wife. No, I thought it was denied because he didn't show up at the last hearing. Correct. He didn't show up to the marriage. He said why he didn't show up and he — and they said he could apply again or there could be another application and there could have been another application. Your Honor, you're absolutely correct. This was in January 2015 that he got his denial notice for not showing up to the interview. It was not until he was already in detention back — it was 16 months later when he was already in detention in May of 2016 that he decided to reapply. This is a 16-month period. But whether there's any negative implication from the fact that he wasn't eligible, if he had gotten the hearing on time, he had gotten the notice of hearing, he could have put in an application and he could have gotten a delay in all likelihood until the application was acted on. Yes, Your Honor. However, he did not. Well, it's not much of an implication. I'm sorry? It's not — I mean, the only reason that negative implication is worth anything is because it's an implication that if he shows up, he's going to be immediately deported, but that isn't true here. But really, it's a question of motive. If he really had — he had no motive to go to the immigration court either way, because he had already conceded his removability and he didn't have any pending applications before the court. There was no reason to be liable. But he could have. There's no doubt that he could have. But he didn't. And this was something that he very easily could have, in fact, that he did before. In fact, he was not only eligible through his spouse, but he was also eligible through his adult daughter, who also submitted one of the affidavits. Turning to the — That just proves more that he could have. He could have, but he didn't. And that's — without having a pending application before the court, the immigration judge was absolutely — did not abuse his discretion in holding that he was — he conceded his removability and he had no relief upon which the court could grant. But that's a different question. I don't think anybody is contending that the immigration judge, based on the information he had, incorrectly determined what was true while he was in absentia. That's not the issue. Certainly. However, this is — the abuse of discretion standard is very deferential, and especially considering that this was affirmed by a three-member panel of the Board of Immigration Appeals. The immigration judge clearly weighed all the evidence. In page 2 of the IJ decision, he considers the fact that, yes, he did show up for 10 previous hearings. Yes, he does have substantial equities in the United States. However, based on a number of other factors, determined that Mr. Sakat was not — But let me ask you something. Why — as I understand the question, there is a presumption of receipt that is rebutted fairly easily. But ordinarily, again, in the common law context, all that gets you is a hearing. It doesn't mean you win as to whether the letter was received or wasn't received. Well, why doesn't it make a lot more sense to proceed that way here? He says he didn't receive it. The daughter says they didn't receive it. The mother says they didn't receive it. He showed up 10 times. He — it appears that he could have filed for relief, even if he hadn't at the time of this hearing that he says he didn't know about. Why don't we just get them in a room with an IJ and let somebody decide whether they got that letter or not? Yes, Your Honor. However, that's not how previous cases in the Ninth Circuit and elsewhere have decided. The cases where they — where the Ninth Circuit has determined that the — there was an abuse of discretion and the motion to reopen should have been granted were cases where, very clearly, the Petitioner had an incentive to show up. In fact, in the same — But I'm asking you whether, if the evidence is less clear, as you say it is in this case, why isn't there an intermediate ground that says you go and you have a hearing instead of simply finding against him when three different people swore on penalty of perjury that they didn't get it? Your Honor, I understand. And it's certainly within the immigration judge's discretion to proceed in that manner. However, with the deferential standard afforded here, this is completely — this was completely permissible. What deferential standard are you referring to? Just the general deferential standard about substantial evidence or what? No, Your Honor. The ability of the immigration judge to exercise his or her discretion in granting a motion to reopen under these circumstances, which are different from Salta, and I realize that I'm over my time now. However, I'm happy to answer any other questions that the panel has. All right.  Thank you very much. Any questions?  Thank you. Thank you. Your Honors, while this Court does give deference to immigration judges, it cannot give deference to their impermissible credibility determinations made on motions to reopen. Here, the immigration judge explicitly stated that the court must determine whether the respondents' self-serving statements made at the cusp of the removal period rebut the presumption of regular mail delivery, citing to an out-of-circuit case for that proposition. However, this Court has explicitly held in Basin v. Gonzalez that the self-serving nature of any affidavit in support of a motion to reopen is not an appropriate basis for discrediting its content. That amounts to an illegal error that is an abuse of discretion. And although opposing counsel states that the immigration judge balanced the factors, this Court has held that when an immigration judge impermissibly considers a negative factor, then that is an abuse of discretion. Here, the immigration judge clinged on to the fact that there was an absence of returned mail. That type of probative evidence, as this Court stated in Salta, is reserved for certified mail cases. It was inappropriate for him to rely on that factor in this regular mail case. Accordingly, we ask that this Court grant the petition. Thank you very much. And thank you for appearing as a student. You've done a lovely job. Thank you, Your Honor. Seacut v. Sessions is submitted. And we'll go to the last case of the day, Heinecke v. Santa Clara University.
judges: Berzon, Bea, Berg